White, C. J.
The correctness of the decision of the-District Court depends on the effect to be given to a provision in section 10 of the act of April 27, 1869, providing for the erection of public buildings, etc., by county commissioners. 66 Ohio L. 52. The provision in question has relation to the duty of the prosecuting attorney in regard to-the contract or contracts which may be- awarded by the commissioners under the preceding provisions of the act,, and is as follows : “ Provided further, that such contract or contracts shall not be binding upon any county until they are submitted to the prosecuting attorney of such county, and by him found to be in accordance with the-provisions of this act, and his certificate to that effect indorsed thereon.”
The plaintiffs, as ground of error, rely on two propositions:
1. That the duty of the prosecuting attorney is limited: to determining whether the contract is legal in form.
2. That he is invested with no discretionary authority,, his duty being merely ministerial.
In regard to the first proposition, it is to be observed that no form is prescribed in which the contract is to be made.. The plans, descriptions, and specifications required to be prepared, are, by force of the statute, made part of any contract the commissioners may enter into. The authority *574 of the commissioners, in order to bind the county by contract in respect to the contemplated improvement, is required to be exercised in the mode prescribed by the statute. The steps to be taken are set forth with great particularity. This is required with the evident.view of excluding improper considerations and influences, and of securing the improvement to the public at the lowest price at which it can be obtained by fair public competition. To insure such competition among bidders, the statute provides for furnishing all needful information to enable them to bid understandingly for the work they propose to undertake.
It seems to us, therefore, that in determining whether the contract is in accordance with the “ provisions ” of the act, the prosecuting attorney, in discharging his duty, is not limited to the form of the contract, but is to ascertain whether the preceding steps required by the statute have been followed. This is rendered still more apparent from the use of similar language in the last- clause of the section, in declaring what shall be done in case the commissioners, under the power there given, annul the contract. In such ease, it is said they shall “ proceed to make another contract or contracts for tire completion of such work, in accordance with the provisions of this act.”
2. Neither can we assent to the second proposition in the general sense in which it is sought to be applied. Where a precise, definite act is required to be performed on a given state of fact, it may be said to be purely ministerial-. Rut where the doing of the act is made dependent, not upon the actual facts, but upon the judgment of the agent in respect to them, the duty of the agent is discretionary, and is fully performed when his discretion has been fairly exercised.
When an officer or agent acts ministerially, he must, of course, use his intelligence in order to understand his authority, and apply it to the proper subject; but he is bound to understand and apply it correctly. Such is the character of the duties performed by a clerk of the court *575 in recording its proceedings, or in issuing a summons or an execution.
It is upon this principle that the mandamus was awarded against the commissioners of Holmes county, in the case of the State, ex rel. v. Harris et al., 17 Ohio St. 616, and in the other cases referred to: Beaver & Butts v. Trustees of the Blind Asylum, 19 Ohio St. 98; Boren & Guckes v. The Commissioners of Darke County, 21 Ohio St. 311.
The case last named arose under the statute now in question, and had special reference to the clause prescribing the duty of the commissioners in awarding the contract. That clause provides that the “ contract shall be awarded to and made with the person or persons who shall offer to perform the labor and furnish the materials at the lowest price.” It was decided in that case, following the decision in Beaver & Butts v. Trustees, etc., supra, that where the statute has been complied with up to the time of awarding the contract, the commissioners are bound to make the award to the person or persons offering to do the work and furnish the materials at the lowest price; provided such price is not in excess of the preliminary estimates. It was also determined in that case, that where a proposal includes labor and materials not called for by the advertisement, and the price proposed is an aggregate sum for' the whole, the proposal can only be regarded as a bid for the work and materials for which bids were invited.
The act now in question is copied, substantially, from the act of April 3, 1868, which provides for the erection, etc., of public buildings by the state (S. & S. 637), and is only so changed as to adapt its provisions to the counties. The original act contains the same provisions in reference to the attorney-general, as the present one contains with regard to the prosecuting attorney ; 'and the provision must, no doubt, receive the same construction in both acts.
We are not now called on to define the limits to which, under the statute, the discretionary authority of the prosecuting attorney may extend, and be final. It is sufficient *576 to say that the facts in the case before us, were such, in our opinion, as to fairly call for its exercise.
In the advertisement to bidders proposals were requested' for doing the entire work or for the several classes of work separately. It was also stated that bidders would be required to use the printed forms prepared by the commissioner’s. In these forms the work was classified as indicated in the notice, with a blank opposite each class to be filled by the bidder. Below this classification was an alternative clause for the entire work, with a similar blank to be filled by the bidder with the sum for which he proposed to do the whole. Various proposals were submitted for the different classes of work. Some of the proposals,, besides being filled up with amounts for the several classes,, contained an aggregate sum for the whole. Of this description was the proposal submitted by the relators. By the abstract of the proposals prepared by the architect,, under the direction of the commissioners, it appeared that the relators were the lowest bidders for the entire work; but that by taking the amounts named for three of the classes of work from the proposal of the relators, and the-lowest amounts named for the other classes of work by other parties, the price of the entire work would be reduced below the aggregate bid of the relators $15,805.20.
On this appearing to the board as the state of the bids, it was proposed by one of the commissioners that the several parties then classified as bidding separately for the-different classes of work be awarded a contract for the work bid for by them respectively. This proposition failed; to carry; a majority of the board, as their record states, being opposed to letting separately to divers parties. A contract for the whole of the work was then awarded to the relators, a majority of the commissioners being of the opinion that the bid of the relators was the lowest bid offered.
It appears from the testimony of Mr. Fornoff, one of the relators, that after the bids were opened; and before the-contract was awarded, he notified the commissioners that: *577 the purpose of the relators was to bid for the whole work,, and that they would not receive a part of the work unless-they had all if they were the lowest bidders.
There was a manifest ambiguity arising from the character of the printed forms, which was calculated to mislead bidders and to give rise to misunderstandings. There was-but one form of bid prepared, although separate bids were-invited for the several classes of work. The heading of the printed form purported to be a bid for the whole work. If the amount set opposite any class of work was not to be regarded as the price at which the bidder was willing to take the work of that class, there was no form of bidding-separately on the different classes, as bidders were invited to do by the public notice.
If the amount set opposite each class of work was to-be regarded as a separate bid for the work of that class,, then clearly the award to the relators was contrary to the statute. That it was to be so regarded was the understanding certainly of one of the commissioners. And such also is the construction that the prosecuting attorney gave-to the bids in determining whether the award of the contract was in accordance with the statute.
"Whether this construction is the correct one or not, the-bids were susceptible of being so construed; and, in so construing and understanding them, we can not say the prosecuting attorney exceeded or abused the discretion, with which he is invested by the statute. -

Leave refused.